UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TEAM OBSOLETE Ltd., TEAM OBSOLETE
PRODUCTS, Ltd., TEAM OBSOLETE
PROMOTIONS INC. NEW YORK
CORPORATIONS, ROBERT T. IANNUCCI,
JIM REDMAN, RICK VESCO as Executor of
the Estate of Don Vesco, DAVE ROPER, LON
MCCROSKEY, M.D., ERIK GREEN and JOHN
KAIN,

        Plaintiffs,

  v.

A.H.R.M.A. Ltd. and AMERICAN
MOTORCYCLIST ASSOCIATION, INC.,

        Defendants.
-------------------------------------------------------x

MEMORANDUM
AND ORDER

01-CV-1574 (ILG)

GLASSER, United States District Judge:

  This action involves vintage motorcycle racing and the organization of racing events by defendants American Historic Racing Motorcycle Association ("AHRMA") and American Motorcyclist Association ("AMA"). The individual plaintiffs[1] are riders of historic motorcycles. Plaintiff Team Obsolete is a corporation that sponsors motorcycle riders, including the plaintiffs, and owns and maintains historic motorcycles. Plaintiff Robert Iannucci ("Iannucci") is the principle shareholder of Team Obsolete. This dispute concerns the alleged exclusion of plaintiffs from events sanctioned or organized

---

[1] The plaintiffs include: Jim Redman ("Redman"), Rick Vesco as Executor of the estate of Don Vesco ("Vesco"), Dave Roper ("Roper"), Lon McCroskey ("McCroskey"), Erik Green ("Green") and John Kain ("Kain"). They are collectively referred to herein as "Riders."

1

by defendants because of their sponsorship by Team Obsolete. Pending before the Court are defendants' motions to dismiss the Third Amended Complaint.

## **FACTS**

The facts of this dispute are set forth in detail in this Court's March 24, 2003 Memorandum and Order, reported at 216 F.R.D. 29 (E.D.N.Y. 2003) ("Team Obsolete I"), familiarity with which is assumed. Briefly, for purposes of these motions, the Court details the procedural history of this litigation. Plaintiffs commenced this action by filing a complaint on March 12, 2001, in which they asserted, inter alia, federal antitrust law and various state law claims. Thereafter, they filed an Amended Complaint on September 12, 2002. See Affidavit of Greg S. Zucker ("Zucker Aff.") Ex. H. Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and plaintiffs moved for leave to further amend the complaint.[2] In Team Obsolete I, the Court, among other things, dismissed plaintiffs' Sherman Act antitrust claims. See id. at 18-19. Additionally, the Court dismissed the California unfair practices claim as to Team Obsolete and Iannucci, see id. at 21, but refused to dismiss that claim with respect to the Riders. Id. at 22. Finally, the Court granted plaintiffs leave to file an amended complaint in accordance with its memorandum and order, which it directed them to file within 20 days of the order. See id. at 10, 30.

Plaintiffs then filed a Second Amended Complaint dated June 19, 2003. On October 15, 2004, they filed yet another complaint, the Third Amended Complaint. Pending before the Court are defendants' motions to dismiss that version of the

---

[2] The Court considered other motions in Team Obsolete I, some by other defendants who were dismissed from the action, which are not relevant here.

complaint.[3]

## **DISCUSSION**

Defendants move to dismiss plaintiffs' complaint for failure to state a claim for relief and for lack of subject matter jurisdiction.[4] When deciding a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6), a court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff. See Ortiz v. Cornetta, 867 F.2d 146, 149 (2d Cir. 1989). A court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [the plaintiff] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "[M]otions to dismiss for [lack of] subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6)." Walker v. New York, 345 F. Supp. 2d 283, 286 (E.D.N.Y. 2004) (citations omitted). Furthermore, "[i]n deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidentiary matters outside the pleadings, such as affidavits and exhibits." Evans Med. Ltd. v. Am. Cyanamid Co., 980 F. Supp. 132, 135 (S.D.N.Y. 1997).

## **I. Leave to Amend**

In the Third Amended Complaint, plaintiffs assert new causes of action against defendants. Defendants urge this Court to dismiss those claims. See AHRMA Mem. at 1; AMA Reply Mem. at 4. In a letter to Magistrate Judge Levy dated May 14, 2004,

---

[3] All citations herein to "Compl." refer to the Third Amended Complaint.

[4] AHRMA does not move to dismiss the First, Fifth, Sixth, Seventh and Eighth counts. See AHRMA Mem. at 2. Moreover, AHRMA moves to dismiss the third and fourth claims based on ly on lack of subject matter jurisdiction and not pursuant to Rule 12(b)(6) for failure to state a claim.

which followed several conferences between the parties, plaintiffs requested an extension of time in which to file and serve an amended complaint. In that letter, plaintiffs' counsel acknowledged that, in light of Team Obsolete I, the amended complaint "would reduce the claims and the parties to the litigation rather than add or clarify any existing causes of action." See Zucker Aff. Ex. A (emphasis added). Judge Levy "so ordered" plaintiffs' request for an extension of time on May 17, 2004. Defendant AHRMA then submitted a letter to Judge Levy dated May 19, 2004 in which it requested that plaintiffs be directed to "remove from their proposed amended complaint extraneous facts that were offered in support of claims which no longer exist in this action." See id. Ex. B. By order dated May 24, 2004, Judge Levy directed plaintiffs to "serve a streamlined complaint, pared to the essentials of their remaining claims." See id. (emphasis added). Defendants argue that Judge Levy's order precludes plaintiffs from asserting any new causes of action. See AMA Mem. at 2-3. The Court agrees. Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party" after the right to amend has expired. Judge Levy's May 24, 2004 order is explicit in its direction that plaintiffs not assert additional causes of action in their amended complaint. Accordingly, the Court dismisses the following causes of action in the Third Amended Complaint with prejudice: (1) Count Two for breach of contract by Team Obsolete against AHRMA; (2) Count Ten for breach of contract based on a third-party beneficiary relationship by Iannucci against AHRMA; (3) Count Eleven for breach of contract based on a third-party beneficiary relationship by the Riders against AHRMA; (4) Count Twelve for breach of contract based on a third-party beneficiary relationship by Team

4

Obsolete against AHRMA; (5) Count Fourteen for breach of contract by Iannucci against AMA; (6) Count Fifteen for breach of contract by the Riders against AMA; and (7) Count Sixteen asserting a derivative claim against AHRMA based on its alleged breach of its fiduciary duties to its members.

In addition, AHRMA moves to dismiss the ninth cause of action asserted by Roper for negligent interference with a contract. See AHRMA Mem. at 7. In his order dated December 6, 2004, Judge Levy indicated, "Plaintiff will withdraw 9th cause of action." See Zucker Aff. Ex. Z. Accordingly, the Court dismisses that cause of action.

## II. Subject Matter Jurisdiction

Defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[5] AMA argues that since this Court dismissed plaintiffs' federal claims in Team Obsolete I, plaintiffs must satisfy the requirements for diversity jurisdiction in order for the Court to have jurisdiction over this action. In Team Obsolete I, this Court denied AHRMA's motion to dismiss the state law claims for lack of diversity jurisdiction. It found that plaintiffs satisfied the requirements for diversity jurisdiction by alleging "that the controversy exceeds $75,000." Id. at 25.[6] Plaintiffs amended their jurisdictional allegations in the Third Amended Complaint.

---

[5] Specifically, AHRMA moves to dismiss the third, fourth, ninth, eleventh, thirteenth and sixteenth claims for lack of subject matter jurisdiction. See AHRMA Mem. at 3, 6. AMA moves to dismiss the thirteenth, fourteenth and fifteenth claims on that ground. See AMA Mem. at 12. Because, as discussed above, the Court dismissed the eleventh, fourteenth, fifteenth and sixteenth claims for failure to obtain leave to amend the complaint and dismissed the ninth cause of action pursuant to Judge Levy's order, the Court considers only the third, fourth, and thirteenth causes of action for purposes of the following analysis of subject matter jurisdiction.

[6] In the Amended Complaint, which the Court considered on defendants' earlier motions, plaintiffs pleaded federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to § 1332. See Zucker Aff. Ex. H ¶ 2.

The requirements for diversity jurisdiction are set forth in 28 U.S.C. § 1332(a): "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... (1) citizens of different States." Although defendants do not dispute that the parties are diverse, they argue that plaintiffs fail to meet the $75,000 amount-in-controversy requirement under § 1332(a). See AMA Mem. at 11.

The Supreme Court set forth the rule governing dismissal for failure to sufficiently allege the jurisdictional amount for diversity jurisdiction as follows: "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-9 (1938) (footnotes omitted). The court has a duty to dismiss the claim if it finds that recovery never could have amounted to more than $75,000. Id. at 290. See also Arnold v. Troccoli, 344 F.2d 842, 845 (2d Cir. 1965) (district court has a duty to further the congressional purpose behind 28 U.S.C. § 1332 of reducing diversity tort cases in federal court by dismissing claims where alleged jurisdictional amount is insufficient). Where, as in this case, several plaintiffs assert claims that are "separate and distinct, ... each plaintiff must satisfy the jurisdictional-amount requirements for suit in the federal courts." Local 538 United Bhd. of Carpenters & Joiners of Am. v. U.S. Fidelity & Guar. Co., 154 F.3d 52, 55 (2d Cir. 1998) (distinguishing cases where aggregation of claims to satisfy the jurisdictional amount is permissible because plaintiffs seek to enforce a single title or right in which they have a common and undivided interest) (internal quotations omitted) (citing Zhan

6

v. Int'l Paper Co., 414 U.S. 291, 294 (1973)).

With regard to Count Three for breach of contract, AHRMA argues that the Riders (excluding Roper) fail to allege facts supporting the damages they claim. See AHRMA Mem. at 4. Plaintiffs allege that they were members in good standing of the AHRMA and that they submitted timely renewal applications for membership to that association. Pursuant to its own rules AHRMA is obligated to accept applications for participation in races from its members unless events are booked. AHRMA is alleged to have breached its contract with the Riders by precluding them from participating in various races because of their Team Obsolete sponsorship. The Riders claim that they were injured in an amount not less than $75,000 and seek injunctive relief to restrain AHRMA from preventing them from using "conforming motorcycles with the sponsor of [their] choice." See Compl. ¶¶ 138-61.

In their memorandum of law, plaintiffs argue that Team Obsolete owns expensive motorcycles and equipment, which the Riders used as members of the team. Since Team Obsolete and the motorcycles it owns and operates were barred from AHRMA events, the Riders would have to pay enormous sums to purchase and maintain their own motorcycles in order to salvage their racing careers. Pl. Opp. at 16-21. The Riders also submitted affidavits describing their alleged losses, principally the lost opportunity to ride Team Obsolete motorcycles in AHRMA events. For example, Redman avers that AHRMA's actions deprived him of the opportunity to race and, as a result, he has lost publicity as a vintage motorcycle rider and the sales of his autobiography have decreased. See Redman Aff. ¶¶ 16-20. Similarly, Kain asserts that he has lost the opportunity to participate in AHRMA events as part of Team Obsolete

and that his career has ended by virtue of AHRMA's actions.[7] See also Green Aff. (alleging that racing in AHRMA events made him a celebrity and that he has lost that status along with opportunities to race). In his affidavit, McCroskey alleges that he purchased three motorcycles for a total of $145,000, which he raced as a member of Team Obsolete, and that Team Obsolete maintained and stored his vehicles. McCroskey Aff. ¶ 6. He alleges that as a result of AHRMA's actions and the end of Team Obsolete's participation in U.S. races, his bikes "are no longer of any use to" him. Id. ¶ 10. Team Obsolete also provided support to Vesco, which enabled him to race historic motorcycles until AHRMA barred Team Obsolete members from racing under that sponsorship. See Iannucci Aff. ¶ 42. Accepting plaintiffs' allegations as true as the Court must for purposes of this motion, and in view of the affidavits submitted, since the Riders were prevented from participating in AHRMA events under Team Obsolete sponsorship, it would have been extremely burdensome if not infeasible for them to obtain support from another source in order to race. See Port Aff. ¶ 11. While AHRMA argues that plaintiffs are not precluded from racing in AHRMA events altogether, as this Court noted in Team Obsolete I at 4, "AHRMA is the only vintage motorcycle racing association in the United States that conducts a national competition series. In other words, anyone who wants to compete for a national title in vintage motorcycling must race in AHRMA events." The Court finds that plaintiffs' allegations that they suffered injury in excess of $75,000 and the evidence submitted prevent it from concluding to a

---

[7] Although some plaintiffs aver that their "careers" as riders are over, they do not claim they have lost income as a result of AHRMA's alleged conduct. In fact, some plaintiffs make clear that they are not employed as motorcycle riders. For example, Kain alleges that he is a corporate airplane pilot. Kain Aff. ¶ 1.

legal certainty that the value of plaintiffs' claims do not exceed the jurisdictional threshold. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (where district court relies on pleadings and supporting affidavits, plaintiff need only make prima facie showing of jurisdiction).[8] Accordingly, the Court denies AHRMA's motion to dismiss Count Three for lack of subject matter jurisdiction.

In Count Four, Roper asserts a cause of action for breach of contract against AHRMA based on its alleged exclusion of him from races because of his Team Obsolete sponsorship. Although he alleges that as a result of the breach he suffered damages in an unspecified amount, Roper seeks only injunctive relief with regard to this claim, specifically, "an Order directing AHRMA to refrain from blocking Roper from working with Team Obsolete and utilizing Team Obsolete as a sponsor of Roper." See Compl. ¶ 167.[9] AHRMA argues that these allegations fail to satisfy the requisite amount in controversy for diversity jurisdiction because Roper's claim for injunctive relief does not exceed $75,000 in value. In opposition, plaintiffs argue that the fact that Roper is not seeking monetary damages does not preclude his allegations from satisfying the

---

[8] AHRMA argues that the fact that in earlier versions of the complaint plaintiffs sought only injunctive relief suggests that their claim for damages is not made in good faith. See AHRMA Mem. at 6. First, the Riders sought monetary relief in their Amended Complaint and the Second Amended Complaint. Second, in any event, the Court does not find that plaintiffs' allegations evidence a lack of good faith. This case is distinguishable from Efereyan v. Gateway 2000, Inc., 1998 WL 175887, at *1-2 (E.D.N.Y. April 13, 1998), a case cited by AHRMA, where plaintiff sued defendant for breach of contract claiming $4,722.95 in damages. Plaintiff alleged an additional loss of business of $50,000, but later changed that amount to $75,000 by hand on the complaint apparently in recognition of the amount-in-controversy requirement. Based on those facts, the Court held, inter alia, that the amount of damages claimed by plaintiff was not alleged in good faith. Id. at *2.

[9] As discussed above with respect to the other individual plaintiffs, the Court has dismissed the other claims asserted on behalf of Roper because plaintiffs were not granted leave to amend their complaint to assert new causes of action. Additionally, as discussed above, the Court dismisses Count Nine for negligent interference with a contract. Therefore, the Court does not rely on those causes of action in ascertaining the sufficiency of the jurisdictional allegations.

jurisdictional amount.  See Pl. Opp. at 19.  AHRMA further argues that, because plaintiffs concede that Team Obsolete is no longer in business, any claims for injunctive relief such as this one to force AHRMA to permit plaintiff to race Team Obsolete motorcycles are moot.  AHRMA Reply Mem. at 5.

The Second Circuit set forth the standard for measuring the value of a claim for injunctive relief for subject matter jurisdiction purposes in <u>A.F.A. Tours, Inc. v. Whitchurch</u>, 937 F.2d 82 (2d Cir. 1991).  Plaintiff tour company alleged that defendant, whom it employed as a tour escort, misappropriated its trade secrets, in particular its customer list.  Plaintiff brought a diversity action seeking an injunction against any use by defendant of confidential information and damages "in an amount which is not presently ascertainable, but which is believed to exceed the sum of $50,000.00," the jurisdictional amount under § 1332(a) at that time.  <u>Id.</u> at 84.  The district court granted summary judgment in favor of defendant.  On appeal, plaintiff challenged the standard applied to its request for injunctive relief and damages.  The Second Circuit held that "[w]here the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction.  In calculating that impairment, the court may look not only at past losses but also at potential harm."  <u>Id.</u> at 87 (citation omitted). Although plaintiff had not yet suffered any actual damages exceeding the jurisdictional threshold, the Court found that the evidence was sufficient to preclude summary judgment with regard to the jurisdictional amount in controversy.  Specifically, documentary evidence established that defendant possessed many customer names and, along with evidence of the value of plaintiff's tours, supported representations by

counsel at oral argument that plaintiff's claim was worth more than the jurisdictional amount.  Id. at 88.  Moreover, the Court found that the injunctive relief plaintiff sought against <u>any</u> future use of the customer lists by defendant was directed at preventing significant potential harm.  Id. at 89.  Based on that evidence, the Court refused to conclude to a legal certainty that the value of plaintiff's claim did not exceed the jurisdictional amount.  Id.

In this case, the Court relies on an affidavit submitted by Roper, in which he avers that since the early 1980s he has been employed by Team Obsolete as a rider and a race mechanic.  <u>See</u> Affidavit of David Roper ("Roper Aff.") ¶ 3.  In that capacity, he has raced rare and valuable motorcycles (the lesser machines are worth between $35,000 and $60,000) owned by Team Obsolete.  Id. ¶ 6.  Roper avers that since 1995 he has participated in approximately 180 races with the support of Team Obsolete.  He alleges that such support has a value of at least $3,000 per race.  Id. ¶ 8.  He further alleges that for the past four years AHRMA has barred him from racing Team Obsolete's motorcycles in all the USA National Competition events except Daytona.  Id. ¶ 4.  Roper alleges that, as a result of the discontinuation of Team Obsolete's U.S. program, "I ride lesser machines that I own and support myself, or a replica machine owned by a friend.  It is simply not possible to recreate the fabulous opportunities and the program support previously provided to me by Team Obsolete."  Id. ¶ 11.

Unlike the evidence in <u>A.F.A. Tours</u>, the evidence in this case does not establish that the impairment Roper seeks to prevent exceeds $75,000 in value.  Roper alleges that his exclusion from AHRMA racing events deprived him of the opportunity to ride valuable motorcycles and, as noted above, he seeks "an Order directing AHRMA to

11

refrain from blocking Roper from working with Team Obsolete and utilizing Team Obsolete as a sponsor of Roper." According to AHRMA, plaintiffs acknowledge that Team Obsolete no longer exists as a racing team. See AHRMA Reply Mem. Ex. A (letter dated January 11, 2005 from plaintiffs' counsel to Judge Levy stating that Team Obsolete wound up its business); see also Iannucci Aff. ¶ 42 (indicating that Team Obsolete has not been able to remain active as a racing team). The fact that Team Obsolete is no longer in operation compels the conclusion that injunctive relief will not prevent the harm at which Roper's claim is aimed, namely, AHRMA's exclusion of Team Obsolete from racing events and Roper vis a vis that entity. Since Roper seeks only injunctive relief, he does not meet the jurisdictional amount-in-controversy requirement. Accordingly, the Court dismisses this claim for lack of subject matter jurisdiction.

In the Thirteenth Cause of Action, the Riders assert a claim against all defendants under California Business and Professions Code §§ 17200 et seq., 17046, and 17048 alleging that AMA and AHRMA colluded to prevent them from participating in races in California by virtue of their Team Obsolete sponsorship. Compl. ¶¶ 236-245. They seek a declaration that the "legal fees rule" is invalid and unenforceable as a matter of law, see id. ¶ 246, and seek an injunction restraining defendants from further such practices. AHRMA argues that plaintiffs fail to satisfy the jurisdictional threshold because they seek solely injunctive relief with regard to this claim. See AHRMA Mem. at 5. As discussed above, a claim for injunctive relief may satisfy the jurisdictional threshold if its value exceeds $75,000. At this stage of the proceedings, the Court cannot conclude to a legal certainty that the future harm plaintiffs aim to prevent in asserting this cause of

12

action does not exceed that amount-in-controversy requirement.

**III.   California Unfair Competition Claim**

AMA moves to dismiss the thirteenth cause of action under California unfair competition law for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[10]  It argues that plaintiffs impermissibly replead their federal conspiracy claims that were dismissed in Team Obsolete I by supplementing allegations of "conspiracy" with "collusion."  See AMA Reply Mem. at 8-10.  AMA further argues that plaintiffs fail to request the proper remedy under the one California statute (of the three pleaded) that is applicable.  Id. at 11.[11]

By way of procedural history, all of the plaintiffs (Team Obsolete, Iannucci and the Riders) asserted this cause of action in the Amended Complaint dated September 12, 2002, which this Court considered on defendants' motions for judgment on the pleadings in Team Obsolete I.  The allegations underlying this cause of action in the Third Amended Complaint are almost identical to those in plaintiffs' Amended Complaint except that only the Riders assert this claim and they add the allegation that they were excluded from racing events by defendants' "joint efforts."  See, e.g., Compl. ¶¶ 236, 239.  Both parties point to this Court's decision in Team Obsolete I, though for different

---

[10]  By contrast, AHRMA does not move to dismiss this claim pursuant to Rule 12(b)(6); rather, its only asserted ground for dismissal as to this claim is for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  See AHRMA Mem. at 2.

[11]  In Count Thirteen, plaintiffs seek an order from the Court "declaring the 'legal fees rule' invalid and unenforceable as a matter of law."  Compl. ¶ 246.  In the Second Amended Complaint, plaintiffs sought identical relief with respect to a separate claim against AHRMA for a declaratory judgment regarding that rule.  The addition of this paragraph to plaintiffs' unfair competition claim appears to have been inadvertent.  Later in the complaint, plaintiffs request injunctive relief with respect to Count Thirteen.

13

reasons.  See AMA Reply Mem. at 8-9; Pl. Opp. at 41.[12]  In that decision, the Court first rejected defendants' argument that the statute of limitations barred plaintiffs' claim. Team Obsolete I at 20.  The Court further held that the complaint adequately alleged injury to the Riders in California as required by the law, but that the claim failed as to Team Obsolete and Iannucci because of their prior admissions that New York was the site of their injury.  Finally, the Court rejected AHRMA's argument that the individual plaintiffs lacked standing to pursue a claim for Team Obsolete's injury given that they were free to race with another team.  Id. at 21-22.  Specifically, the Court held: "Given that the definition of unfair practices should be read broadly under California law, at the pleading stage it cannot be said that the individual plaintiffs' [allegations] are insufficient to state a claim, but defendants may revisit the argument at the appropriate time."  Id. at 22.

This litigation remains at the pleading stage.  In Team Obsolete I, the Court refused to dismiss the individual plaintiffs' claims for unfair competition under California law on the pleadings.  Under the "law of the case" doctrine, the Court refuses to revisit its earlier ruling.  See Messinger v. Anderson, 225 U.S. 436, 444 (1912).  Accordingly, the Court denies AMA's motion to dismiss Count Thirteen.

## CONCLUSION

For the reasons stated above, the Court dismisses the following causes of action in

---

[12] As discussed above, AMA argues that plaintiffs impermissibly replead their federal conspiracy claims, which were dismissed in Team Obsolete I.  In opposition, plaintiffs argue that AMA is precluded from rearguing its motion to dismiss the California unfair practices claim because it did not comply with the time requirement for motions for re-argument under Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.  See Pl. Opp. at 41.

the Third Amended Complaint with prejudice: (1) Count Two for breach of contract; (2) Count Ten for breach of contract; (3) Count Eleven for breach of contract; (4) Count Twelve for breach of contract; (5) Count Fourteen for breach of contract; (6) Count Fifteen for breach of contract; (7) Count Sixteen asserting a derivative claim against AHRMA; and (8) Count Nine for negligent interference with a contract. Additionally, the Court denies AHRMA's motion to dismiss Count Three for lack of subject matter jurisdiction; dismisses Count Four for lack of subject matter jurisdiction; denies defendants' motion to dismiss Count Thirteen for lack of subject matter jurisdiction; and denies AMA's motion to dismiss Count Thirteen for failure to state a claim.

SO ORDERED.


Dated: September 7, 2005
      Brooklyn, New York


_____
I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:

Steven J. Harfenist
Friedman, Harfenist, Langer & Kraut
3000 Marcus Avenue, Suit 2E1
Lake Success, NY 11042

Gary B. Port
Law Office of Gary Port
99 Tulip Avenue, Suite 304
Floral Park, NY 11001

Greg S. Zucker
Westerman, Ball, Ederer, Miller & Scharfstein, LLP
170 Old Country Road
Fourth Floor
Mineola, NY 11501

Brian L. Sullivan
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193